No. 23-2890

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

ERIC D. HOLMES,
*Plaintiff-Appellant,*

v.

RON NEAL,
*Defendant-Appellee.*

**Appeal From The United States District Court
For the Southern District of Indiana
Case No. 1:05-cv-01763-SEB-KMB
The Honorable Judge Sarah Evans Barker**

**REPLY BRIEF OF
PLAINTIFF-APPELLANT ERIC D. HOLMES**

MICHAEL J. BENZA, SB#0061454
Law Office of Michael J. Benza, Inc.
17850 Geauga Lake Road
Chagrin Falls, OH 44023
Telephone: (216) 319-1247
Facsimile: (440) 708-2627
Email: Michael.benza@gmail.com

HEATHER E. WILLIAMS, CA Bar #122664
Federal Defender
HARRY SIMON, CA Bar #133112
KARL SADDLEMIRE, CA Bar #275856
Assistant Federal Defenders
Office of the Federal Defender
801 I Street, 3rd Floor
Sacramento, CA 95814
Telephone: (916) 498-6666
Facsimile: (916) 498-6656
Email: harry_simon@fd.org
       karl_saddlemire@fd.org

Attorneys for the Plaintiff-Appellant,
ERIC D. HOLMES

# TABLE OF CONTENTS

I.   STATEMENT OF THE FACTS ............................................................................. 1

II.  ASSIGNMENT OF ERROR NO. 1 ...................................................................... 1

   A. Holmes's 2005 Habeas Petition Was A Second-In-Time First Petition As It
      Challenged An Independent And Intervening State Court Judgment And The
      District Court Erred In Barring The Petition As A Second Or Successive Petition ................. 1

III. ASSIGNMENT OF ERROR NO. 2 ...................................................................... 7

   A. The Indiana Supreme Court Violated The Fourteenth Amendment's Equal
      Protection And Due Process Clauses When It Refused to Revise Holmes's
      Sentence In Accord With Indiana's 2002 Amendments To Its Death Penalty
      Statute And The Indiana Supreme Court's Holding In *Saylor v. State* ..................................... 7

     1.  Due Process Of Law ............................................................................ 8

     2.  Equal Protection Of Law ................................................................... 11

     3.  Exhaustion And Procedural Default .................................................. 15

     4.  Holmes Ineligibility For A Death Sentence ...................................... 18

IV.  CONCLUSION ................................................................................................... 20

CERTIFICATE OF COMPLIANCE .......................................................................... 22

CERTIFICATE OF SERVICE .................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

Page(s)

*Ake v. Oklahoma*, 470 U.S. 68 (1985) ........................................................................ 13

*Anderson v. Divris*, 138 F.4th 625 (1st Cir. 2025) .................................................... 3

*Atkins v. Virginia*, 536 U.S. 304 (2002) ...................................................................... 7

*Banister v. Davis*, 590 U.S. 504 (2020) ................................................................. 1, 2

*Boddie v. Connecticut*, 401 U.S. 371 (1971) ............................................................ 14

*Brown v. Eplett*, 48 F.4th 543, (7th Cir. 2022) ........................................................ 17

*Cole v. Ark.*, 333 U.S. 196 (1948) ............................................................................. 19

*Daugharty v. Gladden*, 257 F.2d 750 (9th Cir. 1958) ............................................. 16

*Davis v. United States*, 417 U.S 333 (1974) ............................................................... 3

*Davis v. Wechsler*, 263 U.S. 22 (1923) ..................................................................... 17

*Douglas v. California*, 372 U.S. 353 (1963) ............................................................. 12

*Duncan v. Owens*, 577 U.S. 189 (2016) ..................................................................... 14

*Evans v. Wills*, 66 F.4th 681 (7th Cir. 2023) ............................................................ 11

*Evitts v. Lucey*, 469 U.S. 387 (1985) ..................................................... 8, 9, 11, 13, 14

*Ex parte Davis*, 318 U.S. 412 (1943) ........................................................................ 17

*Ex parte Hawk*, 321 U.S. 114 (1944) .................................................................. 17, 18

*Ford v. Georgia*, 498 U.S. 411 (1991) ...................................................................... 17

*Garcia v. Quarterman*, 573 F.3d 214 (5th Cir. 2009) ............................................... 2

*Gardner v. Florida*, 430 U.S. 349 (1977) ................................................................... 8

*Gideon v. Wainwright*, 372 U.S. 335 (1963) .................................................. 10, 13, 14

*Gregg v. Georgia*, 428 U.S. 153 (1976) ...................................................................... 8

*Griffin v. Illinois*, 351 U.S. 12 (1956) ................................................................. 12, 13

*Griffith v. Kentucky*, 479 U.S. 314 (1987) ................................................................ 15

*Herrera v. Collins*, 506 U.S. 390 (1993) ..................................................................... 8

*Hicks v. Oklahoma*, 447 U.S. 343 (1980) ................................................ 5, 10, 11, 12, 15

*Holmes v. Levenhagen*, 600 F.3d 756 (7th Cir. 2010) ................................ 5

*Holmes v. State*, 671 N.E.2d 841 (Ind.1996) ........................................... 4, 6

*Holmes v. State*, 820 N.E.2d 136, (Ind.2005) ......................................... 18

*Hough v. State*, 560 N.E.2d 511 (Ind.1990) ............................................ 19

*In re Jones*, 652 F.3d 603 (6th Cir. 2010) ............................................... 2

*In re Winship*, 397 U.S. 358 (1970) ........................................................ 19

*In re Wood*, 2024 U.S. App. Lexis 12464 (10th Cir. 2024) ....................... 3

*In re Wright*, 826 F.3d 774 (4th Cir. 2016) ............................................. 3

*James v. Kentucky*, 466 U.S. 341 (1984) ................................................. 17

*Johnson v. Wynder*, 408 F. App'x 616 (3d Cir. 2010) .............................. 2

*Jones v. Smith*, 231 F.3d 1227 (9th Cir. 2000) ....................................... 16

*Lambert v. Davis*, 449 F.3d 774 (7th Cir. 2006) ..................................... 6

*Lane v. Brown*, 372 U.S. 477 (1963) ...................................................... 12

*Lee v. Kemna*, 534 U.S. 362 (2002) ....................................................... 17

*Lockett v. Ohio*, 438 U.S. 586 (1978) ..................................................... 8

*Long v. Iowa*, 385 U.S. 192 (1966) ........................................................ 12

*Magwood v. Patterson*, 561 U.S. 320 (2010) ................................. 1, 2, 3, 4, 20

*Marshall v. Rodgers*, 589 U.S. 58 (2013) ............................................... 14

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ............................................ 14

*Mooney v. Holohan*, 294 U.S. 103 (1935) ........................................ 17, 18

*Moore v. Dempsey*, 261 U.S. 86 (1923) ................................................. 17

*Myers v. Ylst*, 897 F.2d 417 (9th Cir. 1990) ........................................... 5

*Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272 (1998) .................... 8

*Owens v. Duncan*, 781 F.3d 360 (7th Cir. 2015) .................................... 14

*Panetti v. Quarterman*, 551 U.S. 930 (2007) ................................... 1, 2, 14

*Picard v. Connor*, 404 U.S. 270 (1971) .................................................. 15

*Pope v. Netherland*, 113 F.3d 1364 (4th Cir. 1997) ........................ 16

*Powell v. Alabama*, 287 U.S. 45 (1932) ........................ 8, 9

*Reid v. Covert*, 354 U.S. 1 (1957) ........................ 8

*Rhines v. Weber*, 544 U.S. 269 (2005) ........................ 2

*Rivers v. Guerrero*, 605 U.S. 443 (2025) ........................ 6

*Ryan v. Gonzales*, 568 U.S. 57 (2013) ........................ 5

*Sanders v. Cotton*, 398 F.3d 572 (7th Cir. 2005) ........................ 16

*Sanders v. United States*, 373 U.S. 1 (1963) ........................ 3

*Saylor v. State*, 808 N.E.2d 646 (Ind.2004) ........................ *passim*

*Slack v. McDaniel*, 529 U.S. 473 (2000) ........................ 1

*Smith v. Bennett*, 365 U.S. 708 (1961) ........................ 11, 12

*Smith v. Yeager*, 393 U.S. 122 (1968) ........................ 3

*St. Pierre v. Cowan*, 217 F.3d 939 (7th Cir. 2000) ........................ 10

*Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998) ........................ 1, 2, 20

*Stone v. Powell*, 428 U.S. 465 (1976) ........................ 17

*Strickland v. Washington*, 466 U.S. 668 (1984) ........................ 13

*Stroud v. State*, 809 N.E.2d 274 (Ind.2004) ........................ 11, 12, 14

*Tompkins v. Sec'y, Dep't of Corr.*, 557 F.3d 1257 (11th Cir. 2009) ........................ 2

*United States ex rel. Kemp v. Pate*, 359 F.2d 749 (7th Cir. 1966) ........................ 16, 17

*United States v. Buenrostro*, 638 F.3d 720 (9th Cir. 2011) ........................ 2

*United States v. Obeid*, 707 F.3d 898 (7th Cir. 2013) ........................ 2

*Vasquez v. Hillery*, 474 U.S. 254 (1986) ........................ 16

*White v. Coplan*, 399 F.3d 18 (1st Cir. 2005) ........................ 14

*Woods v. Donald*, 575 U.S. 312 (2015) ........................ 17

*Woodson v. North Carolina*, 428 U.S. 280 (1976) ........................ 8

*Wright v. Van Patten*, 552 U.S. 120 (2008) ........................ 14

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886) ........................ 14

## Federal Statutes

28 U.S.C. § 2244 ................................................................................................................ 2

28 U.S.C. § 2244(b)(1) ....................................................................................................... 1

28 U.S.C. § 2254 ................................................................................................................ 4

28 U.S.C. § 2255(h) ........................................................................................................... 2

## State Statutes

Ind. Code § 35-50-2-9(b)(7) ............................................................................................. 19

Ind. Code § 35-50-2-9(b)(8) ............................................................................................. 19

## Rules

Advisory Committee Notes to Rule 9 of the Rules Governing Section 2254 Cases in the United States District Courts ............................................................................................................ 3

Fed. R. Civ. P. 59(e) .......................................................................................................... 2

## Constitutional Provisions

Ind. Const. art. VII, § 4 .................................................................................................... 16

U.S. Const. amend. VI ............................................................................................... 9, 13, 16

U.S. Const. amend. VIII ..................................................................................................... 15

U.S. Const. amend. XIV ......................................................................................... 7, 12, 13, 15

## I.   STATEMENT OF THE FACTS

Eric D. Holmes, aka Koor An Nur, relies on the Statement of Facts contained in his Brief on the Merits and other facts as explained throughout his Merit Brief and this Reply Brief.

## II.   ASSIGNMENT OF ERROR NO. 1

### A.   Holmes's 2005 Habeas Petition Was A Second-In-Time First Petition As It Challenged An Independent And Intervening State Court Judgment And The District Court Erred In Barring The Petition As A Second Or Successive Petition

The Warden's Brief fails to address the issue before the Court, choosing instead to ignore clear and binding Supreme Court precedent and this Court's own precedent. The issue before the Court is simple: is Mr. Holmes's 2005 habeas petition a second-in-time, first petition and therefore not subject to the limitations of 28 U.S.C. § 2244(b)(1)? Rather than address this issue, the Warden focuses solely on the issue of why Mr. Holmes's 2005 petition is barred by § 2244(b)(1).

Before getting to review under § 2244(b)(1), it is necessary to first determine whether the 2005 petition is a second-in-time, first petition or a second or successor petition. Only if the petition is a second or successor petition does § 2244(b)(1) apply. Not every numerically second habeas petition qualifies as a second or successor petition. *Banister v. Davis*, 590 U.S. 504, 512 (2020). It is not simply a matter of counting: one petition, two. *Magwood v. Patterson*, 561 U.S. 320, 332 (2010). Rather, the term second or successor is a term of art that incorporates the pre-AEDPA concept of "abuse of the writ." *Id.* at 511. *See also Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998); *Slack v. McDaniel*, 529 U.S. 473, 486 (2000); *Panetti v. Quarterman*, 551 U.S. 930 (2007). If a petition would not qualify as an abuse of the Writ under pre-AEDPA standards, then it is not a second or successor petition under § 2244(b)(1).

Additionally, the Court considers the policy purposes of AEDPA changes to habeas statutes. *Banister*, 590 U.S. at 512. The question under this analysis is "whether Congress would have

viewed it as successor." *Id.*, *citing Martinez-Villareal*, 523 U.S. at 644. The Court identifies Congressional purposes for AEDPA as "'[to] conserve judicial resources, reduc[e] piecemeal litigation,' and 'lend[] finality to state court judgments within a reasonable time.'" *Banister*, 590 U.S. at 512 (citation omitted).

Any fair reading of the Supreme Court's precedent on this topic yields only one conclusion: every habeas petitioner is entitled one review of the merits of his claims. *Rhines v. Weber*, 544 U.S. 269 (2005) (unexhausted state claim); *Martinez-Villareal* (previously dismissed as unripe incompetency to be executed claim); *Panetti* (previously unraised incompetency to be executed); *Magwood* (error at second sentencing proceeding after earlier habeas review); *Banister* (Fed. R. Civ. P. 59(e) is not a second or successor petition). As demonstrated by each of the special circumstances in *Magwood*, *Martinez-Villareal*, *Panetti,* and *Banister*, Congress did not intend to bar habeas review of a claim that did not exist or was not ripe at the time the initial petition was litigated.

This Court's precedents follow this line of cases. In *United States v. Obeid*, 707 F.3d 898 (7th Cir. 2013), the Court held that "a petition or motion based on a claim that did not become ripe any earlier than until after the adjudication of the petitioner's first petition or motion is not 'second or successive' within the meaning of Sections 2244 or 2255(h)." *Obeid*, 707 F.3d at 903. In so doing, the Court joined every other circuit on this issue. In *Obeid* the Court identified the Third Circuit (*Johnson v. Wynder*, 408 F. App'x 616 (3d Cir. 2010); the Fifth Circuit (*Garcia v. Quarterman*, 573 F.3d 214 (5th Cir. 2009); the Sixth Circuit (*In re Jones*, 652 F.3d 603 (6th Cir. 2010); the Ninth Circuit (*United States v. Buenrostro*, 638 F.3d 720 (9th Cir. 2011); and the Eleventh Circuit (*Tompkins v. Sec'y, Dep't of Corr.*, 557 F.3d 1257 (11th Cir. 2009), as all following the rule that a habeas claim that is not ripe at the time the initial petition is adjudicated is properly

deemed a second-in-time, first petition. Since the *Obeid decision*, the First Circuit (*Anderson v. Divris*, 138 F.4th 625 (1st Cir. 2025); the Fourth Circuit (*In re Wright*, 826 F.3d 774 (4th Cir. 2016); and the Tenth Circuit (*In re Wood*, 2024 U.S. App. Lexis 12464 (10th Cir. 2024); announced or acknowledged the same rule—a petition is properly deemed a second-in-time, first petition if it raises a claim that was not ripe or available at the time the initial petition was adjudicated.

*Magwood* makes it clear that a factor for determining that a petition is a second-in-time, first petition focuses on the judgment at issue. Magwood's second-in-time petition challenged a sentencing proceeding held after his first habeas litigation. The Court determined that Magwood's petition challenged a new judgment and therefore was not a second or successor petition. *Magwood*, 561 U.S. at 332-333.  Respondent complains that "Holmes fails to explain how an appellate court decision denying further review is itself a new judgment." Doc. 52 at 12. The *Magwood* Court simply reasoned that there was a "new judgment" where an "intervening judgment" exists and "the errors [Petitioner] alleges are *new*." *Magwood*, 561 U.S. at 338-342 ("This is Magwood's first application challenging that intervening judgment. The errors he alleges are *new*;" concluding "where . . . there is a 'new judgment intervening between the two habeas petitions,' . . . an application challenging the resulting new judgment is not 'second or successive'"). Such reasoning complements long-standing authority allowing consideration of claims not presented earlier due to "intervening and retroactive case law." *Magwood*, 561 U.S. at 335; *Sanders v. United States*, 373 U.S. 1, 17 (1963) ("intervening change in law"); *Davis v. United States*, 417 U.S 333, 346-47 (1974) (same); *Smith v. Yeager*, 393 U.S. 122, 125-26 (1968) (*per curiam*) (same); *see, e.g.*, Advisory Committee Notes to Rule 9 of the Rules Governing Section 2254 Cases in the United States District Courts ("1976 Adoption") ("retroactive change in law").

Mr. Holmes is in the exact same circumstance: his petition challenges a new judgment by

the Indiana Supreme Court: the January 7, 2005 denial of leave to file a successive post-conviction petition and refusing to apply the *Saylor* decision to Holmes. *Holmes v. State*, 671 N.E.2d 841 (Ind.1996). The question is: what judgment is Holmes challenging? The question is not: was Holmes in custody prior to the *Saylor* decision? In *Magwood* the Court directly rejected the argument that custody was the determining factor. *Magwood*, 561 U.S. at 333-334. "The requirement of custody pursuant to a state-court judgment distinguishes § 2254 from other statutory provisions authorizing relief from constitutional violations . . . but it is inextricable from the judgment that authorizes it." *Id*. In this case, the judgment that continues to hold Mr. Holmes on death row is the 2005 judgment of the Indiana Supreme Court refusing to apply the *Saylor* decision to Mr. Holmes's case. The Warden's reliance on the original conviction and sentence as the "judgment" at issue fails to recognize the clear reading of *Magwood*.

Only by bending the timeline of this case is the Warden able to fabricate a claim that somehow Mr. Holmes could have raised this claim in his initial petition. The reality is that this claim did not exist until the Indiana Supreme Court decided to apply the 2002 amendments to the death penalty statute retroactively to those already sentenced to death (but not to Mr. Holmes). The retroactive application of the intervening change in law first occurred on May 21, 2004. *Saylor v. State*, 808 N.E.2d 646 (Ind.2004).

Respondent argues that Mr. Holmes could have amended his initial petition at any time "before it was adjudicated in 2014." Doc. 52 at 14. Respondent has warped the procedural facts of this case. Shortly after the *Saylor* decision Holmes filed a motion to stay and abey the habeas proceedings as he had already returned to state court on the basis of the *Saylor* decision. Respondent opposed the motion to stay arguing that any claim under *Saylor* was not cognizable in habeas. Response to Holmes' [sic] Motion to Stay an Abey, Case No. IP-00-1477. Sixteen days

before dismissing the initial petition the district court denied the motion to stay proceedings. The initial petition was denied on September 4, 2004, before the Indiana Supreme Court's 2005 *Holmes* decision—not 2014 as Respondent argues. This Court ultimately vacated the dismissal of both petitions and ordered the matter stayed due to Holmes's incompetency. *Holmes v. Levenhagen*, 600 F.3d 756 (7th Cir. 2010). While the matter was stayed the cases were transferred from Judge McKinney to Judge Barker.

Based on the Supreme Court decision in *Ryan v. Gonzales*, 568 U.S. 57 (2013), Respondent moved to dismiss the initial petition. On September 26, 2014, concurrent with the dissolution of the stay, No. 1:00-cv-01477-SEB-DML, Doc. 138, Judge Barker, the new district court judge, simply reissued Judge McKinney's 2004 dismissal opinion. No. 1:00-cv-01477-SEB-DML, Doc. 139, 140. Holmes could not have amended his already dismissed initial petition before or during a stay of federal litigation. Moreover, the Indiana Supreme Court's denial of Mr. Holmes's request to file a post-conviction application in January 2005 gave rise to his instant equal protection and due process violations, *see, e.g.*, *Griffith v. Kentucky*, 479 U.S. 314, 323-28 (1987); *Myers v. Ylst*, 897 F.2d 417, 421 (9th Cir. 1990); *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980); he could not have raised such claims in his first petition.

Over express concerns regarding Mr. Holmes's competency to proceed, the district court dismissed the initial petition on September 2, 2004. Case No. 00-cv-1477 Doc 139, PAGEID #: 815 (reissued 2004 opinion in 2014).[1] Mr. Holmes did not exhaust his state court remedies until January 7, 2005: the Indiana Supreme Court then refused to apply the retroactive change in law to him. Then, and only then, the Indiana Supreme Court denied leave to file a successive post-

---

[1] The initial petition was filed prior to electronic filing and accessing the original pleadings electronically is not possible—as this Court is aware—until filings after 2005.

conviction petition—giving rise to his instant application. *Holmes v. State*, 671 N.E.2d 841 (Ind.1996).

This denial came *some four months after* the district court dismissed the initial petition. As is clear from this timeline, there was no option to amend the already dismissed petition. *See Rivers v. Guerrero*, 605 U.S. 443 (2025). Holmes's only avenue for habeas review was to file a second-in-time, first petition which he did on November 23, 2005. Case No. 1:05-cv-1763, Doc. 1.

Holmes does not address this Court's decision in *Lambert v. Davis*, 449 F.3d 774 (7th Cir. 2006), because, by its own terms, it is inapplicable to this case.

> We cannot accept his argument. Saylor is irrelevant to Lambert's sentence, as it concerned a trial court overriding a jury recommendation against imposing a death sentence. That is of no concern here because Lambert's jury recommended a sentence of death.

*Id*. at 778. *Saylor* is directly relevant to Holmes's claim of denial of equal protection and due process as the Indiana Supreme Court granted review and relief to Saylor and directly acknowledged Mr. Holmes's case as in line with *Saylor*. But when Mr. Holmes submitted his own petition the Indiana Supreme Court denied relief.

Finally, the Warden asserts that Holmes somehow waived his arguments by failing to present them to the district court. Once again, the Warden ignores the actual litigation history of the case. As outlined in Holmes's Merit Brief, the district court issued a show cause order why the 2005 petition should not be dismissed. Doc. 61. Before counsel could respond to the show cause order Mr. Holmes filed a *pro se* filing docketed in the initial 2000 habeas petition case. Case No. 1:00-cv-1477, Doc. 160. In this filing Mr. Holmes advised the district court that he directed counsel to not respond to the show cause order and to instead focus their efforts on his repeated, delusional, pervasive beliefs that his trial judge, Judge Emkes, promised him that he was not going to receive a death sentence.

Because Holmes was previously adjudicated incompetent but had not been evaluated since 2007, counsel sought a new competency evaluation and determination. In support of that request counsel sought funding for a forensic psychiatrist as well as a forensic psychologist to evaluate a possible *Atkins v. Virginia*, 536 U.S. 304 (2002) claim based on this Court's order in *Holmes v. Neal*, Case No. 21-2963, R. 3 (7th Cir. 11/4/2021). Counsel advised the district court that if Mr. Holmes were competent his direction to ignore the show cause order was binding on counsel. But if he remained incompetent then additional review was necessary to determine how to proceed.

The district court dismissed the 2005 petition and simultaneously denied the motions for expert services. This dismissal denied Holmes, and counsel, any opportunity to respond to the show cause order. As such, the Warden's argument is both factually and legally incorrect.

For the reasons set forth in Holmes's Merit Brief and this Reply, the Court should vacate the district court's order, find that Holmes's 2005 petition is a properly filed second-in-time, first petition, and remand this matter for full adjudication on the merits of his petition.

### III.   ASSIGNMENT OF ERROR NO. 2

*A.* The Indiana Supreme Court Violated The Fourteenth Amendment's Equal Protection And Due Process Clauses When It Refused to Revise Holmes's Sentence In Accord With Indiana's 2002 Amendments To Its Death Penalty Statute And The Indiana Supreme Court's Holding In *Saylor v. State*

Mr. Holmes's claim is straightforward and properly before the Court: Did the Indiana Supreme Court deny Mr. Holmes the Equal Protection of the law and Due Process of law in treating his case different than similarly situated people?

In 2002 the Indiana Legislature amended the death penalty statute to require a jury verdict recommending a death sentence as a predicate for the imposition of a death sentence. The Legislature did not make the statute retroactive to those already sentenced to death.

In the *Saylor* opinion the Indiana Supreme Court exercised its supervisory powers and held that the 2002 amendment would apply retroactively to those already sentenced to death. *Saylor,*

808 N.Ed.2d at 650-651. In so doing the Court specifically held that "By virtue of the 2002 amendments to the death penalty statute, no future execution will take place without a jury recommendation." *Id.* at 651. In so holding the Court identified that Saylor was a member of a class of three: Saylor, Burris and Holmes. *Id.* at 650.

Holmes was sentenced to death "without a jury recommendation" and yet the Indiana Supreme Court treated him differently than the exact class of death row inmates the Court itself identified him as a member. Holmes, an African-American man, did not receive a jury verdict on a death sentence because his jury was hung 10-2 for a life sentence. [T.R. 10241]. In spite of the Indiana Supreme Court's direct recognition of the impact of the 2002 amendments, the core holding that no death sentence would be carried out "without a jury recommendation", and the acknowledgment of Holmes's sentencing status, the Indiana Supreme Court denied Holmes the relief granted to Saylor, a white man.

1.    Due Process Of Law

The death penalty is like no other penalty both in terms of its finality and scope. *Lockett v. Ohio*, 438 U.S. 586, 605 (1978). Because of the nature of the penalty, capital cases require additional procedural and substantive protections. *Herrera v. Collins*, 506 U.S. 390, 399 (1993); *Gardner v. Florida*, 430 U.S. 349 (1977); *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). Our law struggles to ensure that a defendant receives every required safeguard before and after a sentence of death. *Lockett*, 438 U.S. at 604; *Gardner*, 430 U.S. at 358; *Gregg v. Georgia*, 428 U.S. 153 (1976); *Woodson*, 428 U.S. at 305; *Reid v. Covert*, 354 U.S. 1, 77 (1957) (Harlan, J., concurring in result); *Powell v. Alabama*, 287 U.S. 45, 71 (1932).

This due process protection extends beyond the initial trial to the direct appeal of right. *Evitts*. It also protects a capital defendant in the pursuit of clemency. *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272 (1998). Although the level of due process varies at every step of the

process, this only enhances Mr. Holmes's due process right at state post-conviction. Surely, if Mr. Holmes is entitled to some, as yet unknown, level of due process at the very end of capital litigation, clemency, then he is entitled to significantly more due process at his first opportunity to litigate claims of constitutional violation *de hors* the record, state post-conviction.

It is axiomatic that when a state chooses to act, even though it is not required to act, the act must conform with the dictates of the Constitution, particularly with the dictates of the Due Process Clause. *Evitts v. Lucey*, 469 U.S. 387, 400-01 (1985) (holding "when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution and, in particular, act in accord with the Due Process Clause").

In perhaps the most famous case addressing the denial of Due Process of law in a capital case, the Supreme Court reversed nine capital sentences and remanded for new trials when the state trial court failed to appoint meaningful counsel to the Scottsboro Boys. *Powell v. Alabama*, 287 U.S. 45 (1932). In *Powell*, Alabama provided a right to appointed counsel in capital cases. But when no member of the Bar stepped forward to represent any of the nine African-American juveniles accused of capital rape of two white women, the trial court announced "he had appointed all the members of the bar for the purpose of arraigning the defendants and then of course anticipated that the members of the bar would continue to help the defendants if no counsel appeared." *Id.* at 49, 53. No counsel appeared and all nine juveniles were tried in three separate trials in one day. *Id.* at 50. Only on the morning of trial did one member of the bar apparently cross the bar to sit at counsel table. *Id.* at 57. Even so, that attorney did not consult with any of the defendants, file or make a single motion, nor examine a single witness, present any form of defense, or make any plea whatsoever. *Id.* at 57-58. All nine were convicted and sentenced to death.

The trial occurred in 1931 well before the Sixth Amendment right to counsel was

incorporated to apply to the states. *Gideon v. Wainwright*, 372 U.S. 335 (1963). Rather, the entire issue turned on the Alabama constitution that provided for the right to counsel and Alabama law that mandated the appointment of counsel in capital cases. Upon review of the facts and circumstances of the trial, the Supreme Court reached the conclusion that the trial court's failure to appoint counsel "was a clear denial of due process." *Id.* at 71. Holmes simply asks for the same treatment: that the requirements, law, and decision of the Indiana Supreme Court are held to the same Due Process standards afforded the Scottsboro Boys.

The failure to apply a judicial decision invalidating a sentencing provision to all cases impacted by the now invalidated provision is a clear Due Process Clause violation. *Hicks v. Oklahoma*, 447 U.S. 343 (1980). In *Hicks* the Court addressed the Due Process implications of the Oklahoma Court of Criminal Appeals's failure to apply its earlier decision invalidating a habitual offender statute. The Oklahoma Court of Criminal Appeals recognized that the opinion that invalidated the state law applied to Hicks and yet the Court refused to vacate the unconstitutional sentence finding that there was no prejudice. *Id.* at 345.

The Supreme Court determined two issues directly on point for this case. First, the question presented in the case was not just one of state criminal procedure. *Id.* at 346. Rather, the denial of the application of the state law raised federal constitutional questions subject to federal court review. *Id.* Second, the failure of the state court to apply the clearly established law of the state deprived Hicks of his Due Process rights. *Id.* The Court's resolution of *Hicks* is clearly established law that vests this Court with jurisdiction over Holmes's claims and that the Indiana Supreme Court's decision to refuse to apply the *Saylor* decision to Holmes constitutes a denial of Due Process of law.

This Court clearly recognizes this core Constitutional doctrine. *St. Pierre v. Cowan*, 217 F.3d 939, 949 (7th Cir. 2000) ("Obviously, the state has no obligation to provide appellate or post-

conviction remedies, but if it has chosen to do so, due process principles apply to the terms on which these remedies must be furnished or lost.") (citation omitted); *see also Smith v. Bennett*, 365 U.S. 708 (1961). The Due Process inquiry is simple: was the state's application of its process, rules, or law inadequate to ensure full and proper review of the claims presented? *Evans v. Wills*, 66 F.4th 681, 687 (7th Cir. 2023).

The Indiana Supreme Court determined that the 2002 amendments apply retroactively to those sentenced to death before the amendments were adopted. *Saylor*, 808 N.Ed.2d at 650-51. The Indiana Supreme Court further determined that the impact of the law was that no execution would proceed "without a jury recommendation." *Id.* at 651. Holmes is under a sentence of death "without a jury recommendation" of death. The Indiana Supreme Court determined that Holmes was not prejudiced by the lack of a jury verdict. The application of the *Saylor* decision must comport with the Due Process Clause. *Hicks*; *Evitts*, 469 U.S. at 401. The failure to afford Holmes the application and protection of law set forth in *Saylor* denied Holmes the Due Process of law. *Hicks*.

2.      Equal Protection Of Law

The Indiana Supreme Court recognized that a unique class of death row inmates existed: those whose juries did not return a verdict in favor of a death sentence. *Saylor*, 808 N.E.2d at 650. The Court initially identified a class of three members. *Id.* The Court subsequently recognized two additional members of the class: Minnick and Ben-Yisrayl. In light of *Saylor*, the Indiana Supreme Court granted permission to Minnick, on July 28, 2004, and to Ben-Yisrayl, on August 6, 2004, to pursue successive petitions for postconviction relief. Their death sentences were vacated. The Indiana Supreme Court also applied the 2002 amendments retroactive to Stroud. *Stroud v. State*, 809 N.E.2d 274, 291 (Ind.2004) (death sentence vacated pursuant to the 2002 amendments due to a *Caldwell* error). This leaves Holmes as the only member of the class alive at the time of the *Saylor*

decision to be denied both leave to file a successor postconviction petition and the remedy that

flows from the *Saylor* decision. Holmes is now the only person on Indiana's Row without a jury

sentencing recommendation and will be the only person executed since the *Saylor* decision without

a jury sentencing verdict. And his jury was deadlocked at 10 - 2 for a life sentence.

Having applied the 2002 amendments retroactively to Saylor, Minnick, Ben-Yisrayl and

Stroud, the Indiana Supreme Court could not refuse to provide similar protections to others,

including Holmes, similarly situated without violating Equal Protection rights guaranteed by the

Fourteenth Amendment.[2] *Hicks*. The right to Equal Protection forbids fingering one individual to

bear a legal consequence that is not imposed on others similarly situated regardless of the fact that

this denial occurred in postconviction. *Smith v. Bennett*, 365 U.S. 708 (1961) (equal protection

violated by state's requirement of a postconviction filing fee); *Long v. Iowa*, 385 U.S. 192 (1966)

(equal protection violated on postconviction appeal); *Lane v. Brown*, 372 U.S. 477 (1963) (same).

Equal Protection violations take many forms but at their core a violation occurs when

similarly situated people are treated differently under the law. A state may only, consistent with

Fourteenth Amendment, provide for differences so long as the result does not amount to a denial of

Equal Protection or invidious discrimination. Equal Protection for example requires that indigent

people not be disadvantaged in court based on their ability to afford a counsel. *Douglas v.

California*, 372 U.S. 353 (1963).

Similarly, there cannot be two appellate systems: one for those with money, and one for

those without. *Griffin v. Illinois*, 351 U.S. 12 (1956). The Court decided that "destitute defendants

---

[2] Respondent argues that Holmes was not treated differently than similarly situated individuals "because Holmes cannot show that his case is like Saylor, Minnick, and Ben-Yisrayl." Doc. 52 at 16-19. Yet in all meaningful respects, Holmes was similarly situated to Saylor, Minnick, and Ben-Yisrayl. All cases implicated the application of a new rule—the requirement to sentence according to a unanimous jury verdict at penalty or the requirement mandating special verdict forms at penalty.

must be afforded as adequate appellate review as defendants who have money enough to buy transcripts." *Griffin*, 351 U.S. at 19. The refusal to provide full appellate review "solely because of the poverty" was a denial of Due Process and Equal Protection. *Id*. Violations of Due Process and Equal Protection exist where the court denies full appellate review to an indigent defendant solely because of his inability to pay for a transcript of the record, while granting such review to all other defendants.

In *Gideon*, the Court acknowledged the guaranty of counsel for one prosecuted for a felony is obligatory upon the States by the Fourteenth Amendment. 372 U.S. 335 (1963). The refusal of a state trial court to appoint counsel violates the Sixth Amendment and denies that person Equal Protection. Thus, anyone accused in an American court who is unable to hire a lawyer must be provided with a qualified counsel.

In turn, in *Evitts*, the Court acknowledged that mere formal appointment is not enough to assert that the accused person used his right to have counsel. That a person who happens to be a lawyer is present at trial is not enough to satisfy the constitutional command. *Powell*. An accused is entitled to be assisted by an attorney, one who plays the role necessary to ensure that the trial is fair. *Powell*; *Evitts*. Due Process and Equal Protection also mandate that appointed counsel be effective. *Strickland v. Washington*, 466 U.S. 668 (1984). This right to the effective assistance of counsel includes the right to investigators and other support services. *Ake v. Oklahoma*, 470 U.S. 68 (1985).

The Equal Protection Clause and the Due Process Clause are independent rights but are also often intertwined. Once the Due Process Clause protects a right, the Equal Protection Clause ensures that all are able to exercise that right. That "the statute or a rule may be held constitutionally invalid if it operated to deprive an individual of a protected right although its general validity as a measure enacted in the legitimate exercise of state power is beyond question."

*Boddie v. Connecticut*, 401 U.S. 371, 379 (1971). The Court acknowledged that actions, which foreclose a particular party's opportunity to be heard, offend due process. *Boddie*.

In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Court decided that "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334. The provisions of due process and equal protection require consideration of the private interest that will be affected by the official action; the risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional or substantive procedural safeguards; the government's interest. *Mathews*, 424 U.S. at 335. In *Gideon*, the Court held that "the asserted denial of due process is to be tested by an appraisal of the totality of facts in a given case." *Gideon*, 372 U.S. at 339.

At the same time the Indiana Supreme Court denial of relief violates Equal Protection principles. Saylor, Minnick, Ben-Yisrayl, and Stroud, were all afforded the protections of the 2002 amendments and the Saylor decision. Holmes, a similarly situated death row inmate, was denied those same protections. The application of neutral rules can violate Equal Protection when it is applied unequally. *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886); *Evitts*; *Mathews*. In this case, the disparate treatment of Holmes deprived him of the Equal Protection of the law.[3]

_____

[3] Respondent complains that Appellant has "cited a constellation of cases" but "has not established the 'clearly established federal law' at issue. Doc. 52 at 21. *Citing Wright v. Van Patten*, 552 U.S. 120, 122-23 (2008), he argues "there will not be clearly established federal law" where "there is a 'novel factual context.'" *Id.* But the Supreme Court has made plain that a decision framed in "general" terms can "clearly establish" a rule concerning a variety of factual situations that fall under that general rule. *See e.g., Panetti*, 551 U.S. at 953 ("That the standard is stated in general terms does not mean the application was reasonable. AEDPA does not 'require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied.'") (citation omitted); *Marshall v. Rodgers*, 589 U.S. 58, 62 (2013) (circuit court "correctly" "recognized that the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from this Court's cases can supply such law."); *White v. Coplan*, 399 F.3d 18, 25-27 (1st Cir. 2005) (following "strikingly similar" seventh circuit precedent; "[t]here is no Supreme Court case directly on all fours, but AEDPA requires no such thing. It is enough if the Supreme Court's general principles

14

3.     Exhaustion And Procedural Default

The violation of rights asserted in this petition occurred when the Indiana Supreme Court refused to treat Holmes's postconviction petition the same as it treated Saylor's, Minnick's, Ben-Yisrayl's, and Stroud's petitions. Because there is no review available in any state court when the Indiana Supreme Court denies leave to file a successor petition there was no state court remedy available to Holmes to challenge the Indiana Supreme Court's denial of his petition. Exhaustion and procedural default analysis applies only to "available" state remedies. If there is no state remedy available there is nothing to exhaust nor is there any procedural default.

Holmes properly raised his Fourteenth Amendment claims in the state court litigation; there was no lack of exhaustion. *See, e.g.*, App. 219, 222, 223 (Holmes 2004 State Form for PCR; prior allegations that trial court's refusal to use special verdict forms violated U. S. Constitution [referenced twice]; retroactive application of modified statute to Saylor in *Saylor v. State*, 808 N.E.2d 646 should be applied to Holmes due to refusal to use special verdict forms and jury's failure to return a sentencing recommendation; proffered ground for vacating, setting aside, or correcting Holmes's conviction or sentence: "[s]entence violates the Eighth and Fourteenth Amendments of the United States Constitution").

Holmes sufficiently presented his federal constitutional claims to the Indiana Supreme Court and gave the Court an opportunity to apply controlling legal principles to the facts bearing upon [the] constitutional claim." *Picard v. Connor*, 404 U.S. 270, 277 (1971) (citation omitted);

---

can be discerned" from salient decisions); *Owens v. Duncan*, 781 F.3d 360, 365-66 (7th Cir. 2015) ("It's true that we know of no case identical to this one . . . . But identity can't be required. The Supreme Court has made clear in the [SCOTUS] cases we've cited and quoted" the general standard applied), *writ of certiorari dismissed as improvidently granted at Duncan v. Owens*, 577 U.S. 189 (2016). Even if no prior U.S. Supreme Court case possesses factual identity with Holmes's alleged Equal Protection violation, the general dictates of the Equal Protection Clause in context of retroactive application of law may clearly be discerned from *Griffith*, 479 U.S. at 323-28, *Hicks*, and the many, other authorities heretofore cited.

*United States ex rel. Kemp v. Pate*, 359 F.2d 749, 750-51 (7th Cir. 1966). Holmes satisfied the dictates of the Supreme Court's established rule: he "presented the substance of his claim to the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 258 (1986). A Petitioner need not "cite to the [ ] court book and verse on the federal constitution" to properly present a cognizable federal habeas claim. *Daugharty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958). Instead, a Petitioner need only present to the court "all the operative facts giving rise to the asserted constitutional principle." *Id.*; *accord Pope v. Netherland*, 113 F.3d 1364, 1368 (4th Cir. 1997). Some discernible reference to a federal constitutional right is all that is normally required. *Graham v. Solem*, 728, F.2d 1533, 1535-36 (8th Cir. 1984); *accord Jones v. Smith*, 231 F.3d 1227, 1231 (9th Cir. 2000) (petitioner's explicit reference to Sixth Amendment in state court pleadings "was sufficient to keep the issue alive in state courts, notwithstanding that his state court briefs predominately cited state court cases"); s*ee Picard*, 404 U.S at 278.

Holmes alleged that the "retroactivity" of the "United States Supreme Court *Apprendi/Ring* jurisprudence" was "the core of both parties' arguments" in *Saylor* relating to the 2002 Amendments, and those U.S. Supreme Court decisions (as well as the 2002 Amendments and the *Saylor* decision itself) should be applied to him. *See, e.g.*, App. 215-17 (Memorandum in Support of Petition for Review of Death Sentence Pursuant to Article VII, Section 4 of the Indiana Constitution; "[l]ike Mr. Saylor, the statutory changes relevant to [Holmes] are the result of United States Supreme Court *Apprendi/Ring* jurisprudence. The applicability of *Ring*, the retroactivity of which was pending before the United States at the time of the *Saylor* decision, was at the core of both parties' arguments. Even so, [the Indiana Supreme Court] chose to review and revise Saylor's sentence pursuant to Article VII, §4 of the Indiana State Constitution solely within the context of state law." Holmes satisfied exhaustion requirements. *Sanders v. Cotton*, 398 F.3d 572, 580-81 (7th Cir. 2005) (application of constitutional analysis and reliance on one pertinent federal case satisfies

16

exhaustion); *Brown v. Eplett*, 48 F.4th 543, 555 (7th Cir. 2022) (same); *United States ex rel. Kemp*, 359 F.2d at 750-51 (allegations of a pattern of facts well within the mainstream of federal constitutional litigation exhausts claim); *Daugharty,* 257 F.2d at 758.

The procedural posture of this case makes procedural default simply inappropriate. In *Lee v. Kemna*, 534 U.S. 362 (2002), the Court held:

> Ordinarily, violation of "firmly established and regularly followed" state rules . . . will be adequate to foreclose review of a federal claim. *James v. Kentucky*, 466 U.S. 341, 348 [ . . . ] (1984); see *Ford v. Georgia*, 498 U.S. 411, 422-424 [ . . . ] (1991). There are, however, exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question. See *Davis v. Wechsler*, 263 U.S. 22, 24 [ . . . ] (1923) (Holmes, J.) ("Whatever springs the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice.")

*Id*. at 376.

"[W]here resort to state court remedies has failed to afford a full and fair adjudication of the federal contentions raise, either because the state affords no remedy, *see Mooney v. Holohan, supra*, 294 U.S. 115, [ . . . ] or because in the particular case the remedy afforded by state law proves in practice unavailable or seriously inadequate, *cf. Moore v. Dempsey*, 261 U.S. 86 [ . . . ]; *Ex parte Davis*, 318 U.S. 412, [ . . . ], a federal court should entertain his petition for habeas corpus, else he would be remediless. In such a case he should proceed in the federal district court before resorting to this Court by petition for habeas corpus." *Ex parte Hawk*, 321 U.S. 114, 118 (1944); *see also Stone v. Powell*, 428 U.S. 465 (1976). Quite simply, when state courts fail to provide an opportunity for meaningful review, the concept of comity to state courts that is at the heart of the exhaustion and procedural default doctrines are simply inapplicable. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). The purpose of the doctrines is to give the state courts the opportunity to rule on constitutional claims before they are presented in federal habeas. But this

can only occur when there is a state court process that is available. *Mooney*; *Ex parte Hawk*.

Holmes's Due Process and Equal Protection claims are properly before this Court and ripe for review.

> 4. Holmes Ineligibility For A Death Sentence

Respondent argues that "Holmes does not show that the Indiana Supreme Court clearly erred when it said, "Th[e] unanimous verdict in the guilt phase necessarily establishes that the jury found, beyond a reasonable doubt, aggravating circumstances rendering Holmes eligible for the death penalty." Doc. 52 at 19 (citing *Holmes III*, 820 N.E.2d at 139). Respondent, and ultimately, the Indiana Supreme Court, woefully misunderstands the guilt phase verdicts and the operative (b)(1) and (b)(8) aggravating circumstances: the guilt phase verdicts fail to support either aggravator.

As for the (b)(1) aggravator: Respondent acknowledges that Holmes was only "found guilty of the robbery of Ervin"—not Blosl. *Id.* at 18. Indeed, the (b)(1) aggravator for Blosl was premised on facts *never submitted* to the guilt phase jury: facts concerning the robbery of Blosl. The State charged Holmes under the (b)(1) aggravator with the intentional murder of Blosl during the commission of a robbery of Blosl alone, and defendant was arraigned on these same charges. [TR 113, "ERIC D. HOLMES "committed said murder by intentionally killing THERESA BLOSL while committing or attempting to commit Robbery which is to knowingly, while armed with a deadly weapon, to-wit: A KNIFE, take from the person or presence of THERESA BLOSL property . . . by putting THERESA BLOSL in fear or by using or threatening the use of force on THERESA BLOSL . . . ."; TR 1139-1151 (same)]. The court later instructed the jury on the intentional murder of Blosl during the robbery of Blosl. [TR 786; 789; 822]. But Holmes's guilt phase charges and instructions were all premised upon the robbery *of Ervin*—not the robbery of Blosl. [TR 99-101; 666-670; 671-673; 674; 675; 712-713; 714; 717-718; 740-741; 742]. At the penalty phase of

Holmes's trial the prosecution merely moved to admit all guilt phase evidence, and then rested. [TR 9276-9278]. At sentencing, the trial court placed "substantial" and "great weight" on the (b)(1) Blosl aggravator, and partly rested its death sentence on the "murder of Blosl" during the commission of "the robbery of Theresa Blosl and Charles Ervin" [TR 1053 (sentencing order); TR 10323-10324 (sentencing pronouncement); *see generally* TR 1052-1054, 1055; TR 10322-10329].

Transparently, the Indiana Supreme Court's majority was wrong: the facts established by the guilt phase verdicts—the robbery of Ervin—fail to demonstrate the jury ever found requisite facts—the robbery of Blosl—justifying death beyond a reasonable doubt. *Id.*

The (b)(8) aggravator is also invalid. Respondent maintains that the "sequence of the murders does not matter" for the multiple murder aggravator, "as the plain language of the aggravating circumstance makes clear." Doc. 52 at 18-19 & n.4. Respondent's interpretation of the statute is wrong,[4] but even worse: Respondent fails to acknowledge that the prosecution charged and submitted to the jury a sequence of killings for the (b)(8) aggravator, Ervin before Blosl. [T.R. 113-14; information for death sentence for murder of Blosl, where Holmes already "had committed another murder . . . to-wit: CHARLES W. ERVIN."]. *In re Winship*, 397 U.S. 358, 361 (1970) ("The requirement that guilt of a criminal charge be established by proof beyond a reasonable doubt dates at least from our early years as a Nation"); *Cole v. Ark.*, 333 U.S. 196 (1948) (due process violated by court sustaining conviction on grounds not charged in the information and which the jury had no opportunity to pass upon; "It is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never tried as it would be to

---

[4] The cited statutory text of I.C. 35-50-2-9(b)(8) unmistakably implies a requisite finding of sequential order (i.e., "[t]he defendant *has committed another murder*, at any time, regardless of whether the defendant has been convicted of that other murder."). It is clear, from context, that the "at any time" qualifier simply distinguishes the (b)(8) aggravator from the (b)(7) aggravator, which applies to prior convictions. I.C. 35-50-2-9(b)(7) ("The defendant has been convicted of another murder"); *Hough v. State*, 560 N.E.2d 511, 519 (Ind.1990).

19

convict him upon a charge that was never made"; reversed and remanded). Accordingly, the trial court unmistakably found Ervin was killed *before* Blosl. [TR. 113-114; TR 785-86; TR 1055] The trial court did not sentence Holmes to death for the separate Ervin (b)(1) aggravator—only for the death of Blosl. In sentencing Holmes to death the trial court "place[d] full and substantial weight of the highest level on the aggravator as presented by the State that [] Blosl was intentionally murdered *after* [] Ervin." [T.R. 1054] (emphasis added). But the jury was never instructed to make the finding of which victim was killed first.

## IV.    CONCLUSION

For the reasons set forth in the Opening Brief and this Reply, the Court should determine that Holmes's 2005 petition was a properly and timely filed second-in-time petition. *Magwood*; *Panetti*; *Martinez-Villareal*. The Court should also determine that the Indiana Supreme Court's refusal to apply the 2002 amendments to the death penalty scheme and the *Saylor* decision to Holmes denied him Due Process and Equal Protection. This Court should vacate the dismissal order and grant the petition, or alternatively, remand to the district court for re-briefing, further development, and complete review of the underlying merits.

Dated: October 15, 2025                          Respectfully submitted,

HEATHER E. WILLIAMS
Federal Defender

/s/ *Michael J. Benza*
MICHAEL J. BENZA
Attorney at Law

/s/ *Karl Saddlemire*
KARL SADDLEMIRE
Assistant Federal Defender

/s/ *Harry Simon*
HARRY SIMON
Assistant Federal Defender

Attorneys for the Plaintiff-Appellant,
ERIC D. HOLMES

## CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7), FRAP RULE 32(e) and 32 (g) and Circuit Rule 32(c)

The undersigned, counsel of record for the Plaintiff-Appellant, Eric D. Holmes, furnishes the following in compliance with F.R.A.P Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P Rule 32(a)(7) for a brief produced with a proportionally spaced font. The length of this brief is 6,993 words.


Dated: October 15, 2025          OFFICE OF THE FEDERAL DEFENDER

*Karl Saddlemire*
KARL SADDLEMIRE
Assistant Federal Defender
Attorney for the Plaintiff-Appellant, Eric D. Holmes

801 I Street, 3rd Floor
Sacramento, CA 95814
(916) 498-6666

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing Appellant's Opening Brief was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated: October 15, 2025   OFFICE OF THE FEDERAL DEFENDER

         *Karl Saddlemire*
         KARL SADDLEMIRE
         Assistant Federal Defender
         Attorney for the Plaintiff-Appellant, Eric D. Holmes

801 I Street, 3rd Floor
Sacramento, CA 95814
(916) 498-6666